IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **GARY VAUGHN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 06-cv-4038-MJR** |
| | ) | |
| **MICHAEL JOHANNS, SECRETARY** | ) | |
| **OF THE UNITED STATES** | ) | |
| **DEPARTMENT OF AGRICULTURE,** | ) | |
| **JOB CORPS NATIONAL FIELD** | ) | |
| **OFFICE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

..................................................................................................................................................

| | | |
|---|---|---|
| **CHUCK TWARDOWSKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 06-cv-4039-MJR** |
| | ) | |
| **MICHAEL JOHANNS, SECRETARY OF** | ) | |
| **THE UNITED STATES DEPARTMENT** | ) | |
| **OF AGRICULTURE, JOB CORPS** | ) | |
| **NATIONAL FIELD OFFICE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM and ORDER**

**REAGAN, District Judge:**

Before the Court is Defendant's, Michael Johanns', motion for summary judgment (Doc. 47). For the reasons that follow, the Court **DENIES** Defendant's motion.

**I.    Factual & Procedural History**

On February 13, 2006, Plaintiffs, Gary Vaughn and Chuck Twardowski, Caucasian

1

employees of the United States Department of Agriculture ("USDA"), filed separate lawsuits alleging that they were denied promotion to a senior position because of racial discrimination, in violation of **Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e,** *et seq*. Plaintiffs allege that another employee of Defendant, an African-American, was promoted to the position in spite of being neither the most qualified nor the highest scoring applicant. On February 13, 2007, the Court granted Defendant's motion to consolidate pursuant to FED. R. CIV. P. 42(a) and consolidated Vaughn's and Twardowski's cases.

Plaintiffs allege that, in 2004, a vacancy became available for the position of Supervisory Social Services Assistant ("SSSA"). The initial job announcement, in March, 2004, required that a successful applicant possess a GS-9 level of experience. Both Plaintiffs were qualified for this position. The vacancy announcement was canceled on March 25, 2004, and was later re-posted as a GS-8/9, for which both Plaintiffs were also qualified. Plaintiff Vaughn had the most experience in performing the job listed in the vacancy announcement; Plaintiff Twardowski received the highest interview score. On July 7, 2004, Roy Lee, an African-American employee of the USDA, who had a GS-7 classification, was promoted to the position. Plaintiffs allege that they were not promoted to the senior position because of race discrimination.

In support of Defendant's motion for summary judgment, he provides the affidavits of five USDA employees at the USDA's Golconda Job Corps Center (the "Center"): David C. Floyd, Director, African-American; Elaine Lassner, human resources officer, Caucasian; Jim Steffen, counselor, Caucasian; Sharon Newbold, computer technician, Caucasian; and Ted McCreary, residential supervisor, African-American. Doc. 48, Exhibits 1-5. Lassner advertised the vacancy, discovered that she had made a mistake in how the position was advertised and, after

2

consulting with the Job Corps National Field Office, readvertised the position. *Id*., Exhibit 2. She alone chose the selection committee, which consisted of McCreary, Newbold and Steffen. *Id*. The committee reviewed the list of qualified candidates, interviewed them telephonically and recommended that Lee be hired for the vacant position. *Id*. Lassner declares that race played no role in any of her actions and decisions during this process. *Id*. Floyd declares that he gave great deference to the recommendation of the selection committee, as was his custom and practice, and that he agreed with their choice. *Id*., Exhibit 1. Floyd, too, asserts that race played no role in his choosing Lee for the vacancy. *Id*.

The members of the selection committee agree on their role in the process. *Id*., Exhibits 3-5. Having reviewed the applications and interviewed the candidates, they unanimously agreed to recommend Lee for the position. *Id*. Using the evaluation criteria published in the vacancy announcement, the committee assessed the individual applications and ranked the candidates as follows:

| | |
|---|---|
| Chuck Twardowski | 75 points |
| Roy Lee | 74 points |
| Gary Vaughn | 68 points |
| Jack Terrell | 60 points |

*Id*. The numerical rankings were a tool only and were not meant to be a decisive factor in the evaluation process. *Id*. The committee believed that ". . . Lee was the best person for the job because he demonstrated a very consistent, positive philosophy for impact on the Center's culture." *Id*. Lee's "vision for the position and the overall success of the Center elevated his application to be the number one candidate." *Id*. The committee members declare that race played no role in their recommending Lee for the position. *Id*.

 II.     **Applicable Legal Standard**

3

Defendant seeks summary judgment on Vaughn's and Twardowski's discrimination claims, pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 56(c).**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, admissions, and affidavits leave no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  **FED. R. CIV. P. 56(c).**  The moving party bears the burden of establishing both the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metropolitan Life Ins. Co.*, **123 F.3d 456, 461 (7th Cir. 1997).**

In determining whether a genuine issue of material fact exists, the Court reviews the record in the light most favorable to the non-moving party and makes all reasonable inferences in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986);** *Ulichny v. Merton Community School Dist.*, **249 F.3d 686, 699 (7th Cir. 2001);** *Miranda v. Wisconsin Power & Light Company*, **91 F.3d 1011, 1014 (7th Cir. 1996).**  However, the mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. *Anderson,* **477 U.S. at 247;** *Salvadori v. Franklin Sch. Dist.*, **293 F.3d 989, 996 (7th Cir. 2002).**  Rather, to successfully oppose summary judgment, the non-movant must present definite, competent evidence in rebuttal. *Vukadinovich v. Board of Sch. Trs. of North Newton Sch. Corp.*, **278 F.3d 693, 698-99 (7th Cir. 2002)**.

**III.    Analysis**

Title VII forbids workplace discrimination with respect to the compensation, terms, conditions, or privileges of employment "because of" an individual's race.  *Hardy v. Univ. of Illinois at Chicago*, **328 F.3d 361, 364 (7th Cir. 2003); 42 U.S.C. § 2000e-2(a)(1).**

A Title VII plaintiff must either (a) provide direct or circumstantial evidence of an

employer's discriminatory intent or (b) show disparate treatment using the indirect, burden-shifting method established in *McDonnell Douglas Corp. v. Green*, **411 U.S. 792, 802-04 (1973).** *See Contreras v. Suncast Corp.*, **237 F.3d 756, 759 (7th Cir.),** *cert. denied*, **534 U.S. 824 (2001)**. "To demonstrate a prima facie case for a failure to promote claim, the plaintiff must show that: (1) [he] is a member of a protected group; (2) [he] applied for and was qualified for the position; (3) [he] was rejected for the position; and (4) [the person who was] promoted had similar or lesser qualifications for the position, or other evidence from which one can infer that the plaintiff was denied promotion for a discriminatory reason." *Pafford v. Herman,* **148 F.3d 658, 669 (7th Cir. 1998)** (*citing Leffel v. Valley Fin. Servs.*, **113 F.3d 787, 793 (7th Cir. 1997)**). Because Plaintiffs are white, they must also "show 'background circumstances' sufficient to demonstrate that the particular employer has 'reason or inclination to discriminate invidiously against whites' or evidence that 'there is something 'fishy' about the facts at hand.'" *Ineichen v. Ameritech,* **410 F.3d 956, 959 (7th Cir. 2005)** (*citing Phelan v. City of Chicago*, **347 F.3d 679, 684 (7th Cir. 2003)**).

If the plaintiff satisfies his burden as to this prima facie showing of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision. *McDonnell Douglas*, **411 U.S. at 802***.* If the defendant does so, that rebuts the presumption of discrimination and shifts back to the plaintiff the burden of showing that the defendant's proffered reason was pretextual. *Id.*; *Michas v. Health Cost Controls of Ill., Inc.*, **209 F.3d 687, 692-93 (7th Cir. 2000).** The ultimate burden of proof that the defendant discriminated remains on the plaintiff at all times. *Chiaramonte v. Fashion Bed Group, Inc.*, **129 F.3d 391, 398 (7th Cir. 1997)**. Plaintiffs claim that they can sustain their discrimination case under both the direct and indirect methods of proof.

5

*Plaintiffs' Showing of Discrimination Using the Direct Method of Proof*

Direct evidence of discrimination takes a "smoking gun" form, such as the statement, "I fired you because of your age or disability." **Robin v. Espo Engineering Corp., 200 F.3d 1081, 1088 (7th Cir. 2000)**. Circumstantial evidence falls into three general types: 1) suspicious timing, ambiguous statements, behavior or comments directed at other employees in the protected group, and other conduct or information from which an inference of discriminatory intent might be drawn; 2) that employees similarly situated to the plaintiff other than in the characteristic (here, race) on which an employer is forbidden to base a difference in treatment received systematically better treatment; and 3) evidence that the plaintiff was qualified for the job in question but passed over in favor of a person not having the forbidden characteristic and that the employer's stated reason for the difference is a mere pretext for discrimination. **Troupe v. May Dept. Stores Co., 20 F.3d 734, 736 (7th Cir. 1994)**.

The USDA implemented an affirmative employment program which had the objective of identifying and removing systemic barriers to diversity and enhancing diversity recruitment. Doc. 54, Exhibit O. The fiscal year identified in the Plan was 2004, with monitoring and evaluation through fiscal year 2005-2006. *Id*. With respect to employee development and promotions within the Department, the Plan identified the need to utilize "more focused means to analyze opportunities for selection progression and professional development of EEO protected groups for leadership." *Id*. As "highlights and noteworthy accomplishments" for 2003, the USDA noted the progress made in "meeting affirmative employment plan goals." *Id*.

In addition to this policy, the USDA implemented "Special Emphasis Programs" ("SEP") Doc. 54, Exhibit R. The purpose of the SEP was to "address the unique concerns of

women, minorities and persons with disabilities in achieving equal opportunity." *Id*. Key indicators of an effective SEP included progress towards achieving a diverse work force at all grade levels and in all occupations, and outreach efforts to under-utilized and under-served communities. *Id*. "Under-utilization" was described as "[t]he absence of minorities, . . . from an organization work force. . . ." *Id*. Among the SEPs authorized within the USDA was an "African American Emphasis Program." *Id*.

The Court has also reviewed the USDA regulation on Civil Rights Accountability Policy and Procedures. Doc. 54, Exhibit S. Floyd's annual performance appraisal included ". . . an evaluation of [his] contributions to USDA's commitment to civil rights and equal opportunity, and adherence to its civil rights policy." *Id*. He was ". . . responsible and accountable for maintaining a civil rights program that [would] accomplish the strategic civil rights goals." *Id*.

The Court will not here consider the meritoriousness or validity of Defendant's affirmative employment program, the SEPs or incentivizing the hiring and promotion of minorities. The Court merely notes "the constitutional problems with government race-based decisionmaking" and observes that "government action that 'rest[s] solely upon distinctions drawn according to race' [must] be 'subjected to the 'most rigid scrutiny.'" ***Parents Involved in Community Schools v. Seattle School Dist. No. 1,* 127 S.Ct. 2738, 2774 (2007) (*citing Loving v. Virginia*, 388 U.S. 1, 11 (1967) (*quoting Korematsu v. United States*, 323 U.S. 214, 216 (1944))**.

The Court also notes that Defendant did not address these plans and programs in his motion for summary judgment, nor did he file a reply, relying rather on his assertion that "plaintiffs have no evidence" to sustain their claim under the direct method. Defendant relied instead on the indirect method of proof. He asserts that the five affidavits he provided rebut any evidence offered

that the proffered reason for hiring Lee for the vacant position is pretextual. The Court, however, is not inclined to be dismissive of the evidence offered by Plaintiffs. Essentially, Defendant argues that race played no role in the selection of Lee, and Plaintiffs argue that it did. A dispositive motion is a singularly inappropriate time to resolve this sort of "he said she said" dispute. *See Russell v. Board of Trustees of the University of Illinois at Chicago*, **243 F.3d 336, 340 (7th Cir. 2001)**. Therefore, the Court finds sufficient direct evidence of a triable issue of fact as to whether Plaintiffs were discriminated against in employment "because of" their race.

In the alternative, the Court also finds sufficient circumstantial evidence of discriminatory intent to defeat Defendant's motion for summary judgment. Plaintiffs provide evidence of "suspicious timing" in the manner in which the initial job announcement was made in March, 2004, requiring a GS-9 level of experience. Elaine Lassner, the USDA employee in charge of human resources at the Golconda Center where Plaintiffs were employed, states that she "made a mistake in how the vacant position was advertised." Doc. 48, Exhibit 2, Lassner Affidavit. Lassner "had forgotten about a recent change in procedures regarding announcements in this particular job series." *Id*. She consulted with her Sheri Whiteside, the Personnel Assistant in the Denver office that services Golconda Center, and was told to readvertise the position. *Id*.[1]

Defendant does not document in any way the source and date of the "recent change in procedures." Plaintiffs, on the other hand, provide a memorandum, dated May 7, 2004, which

---

[1] As Plaintiffs point out, this testimony is contradicted by Lassner's answer to an Interrogatory, in which she stated, that she was unaware of the changes in classification and the staffing module until May, 2004. Doc. 54, Exhibit T. She stated, "This was the first time I'd heard that the series wasn't a two-grade interval series." *Id*. (emphasis in original). She further stated that she forgot because this was the first position of this type advertised after receiving this instruction. *Id*. She asked Whiteside to rescind the GS-9 vacancy announcement and readvertise it as a GS-8/9. *Id*.

describes a departure from a past practice regarding classification and staffing of one-grade interval occupations. Doc. 54, Exhibit F. The memorandum references a prior memorandum, dated December 23, 2003, not provided to the Court, which instructed servicing human resources offices to discontinue immediately the practice of applying two-grade interval pattern to one-grade interval series. *Id*., p. 1. It does not appear, however, as if the policy change was fully implemented until the May 7th memorandum because that memorandum states, "This policy . . . [is] effective immediately and do[es] not apply to previous actions." *Id.,* p. 6. According to the memorandum, vacancies that were currently open were to be canceled and reannounced to adhere to the new direction. *Id*., p. 5. One example given in the memorandum was that a position could be advertised as GS-8/9, in which case a GS-7 with one year of specialized experience at the GS-7 level would qualify for the GS-8. *Id*. This is precisely what occurred in the instant action, which allowed Lee to apply for the position.

Additionally, Whiteside e-mailed Lassner on March 29, 2004, asking if the reply pool on her original outreach regarding the position at issue herein was "a good one." Doc. 54, Exhibit W. Lassner responded that she received no responses to outreach from outside the unit; however, four of the five GS-7s (which included Lee) expressed an interest internally. *Id*. Plaintiffs suggest that this is evidence that no qualified minority candidate applied outside of the Center, leaving only Plaintiffs as qualified applicants; therefore, the vacancy was pulled and readvertised to allow the GS-7s to apply.

In short, the timing of the withdrawal of the original announcement could appear suspicious. If the policy was not effective until May, why was the March vacancy announcement withdrawn and the position readvertised? A jury could draw an inference of discriminatory intent

9

if they believed that the March notice was withdrawn because it did not bring in the desired minority applicants. The jury could also find this situation to be "fishy."

As evidence that minority applicants and employees received systematically better treatment, in addition to the affirmative employment program, the SEPS and the incentivizing of minority hiring and promotion, Plaintiffs state that, during Floyd's tenure, he appointed five of the seven African-American employees who currently hold supervisory or managerial positions at the Center. Doc. 54, Exhibit T. Plaintiffs also state that, on the same day that Floyd announced Lee's appointment, he reassigned an African-American employee, at the employee's request, from his position as Culinary Arts Instructor to the position of Cook, a competitive job. *Id.*, Exhibit Q. Vaughn testified that, typically, a failing employee was subject to a progress improvement plan, and the competitive job was advertised nationwide. *Id.*, Exhibit B. If the Defendant did not follow his own internal procedures with respect to this process, this may be evidence from which a reasonable jury could infer that minorities systematically received better treatment at the Center. ***See Rudin v. Lincoln Land Community College*, 420 F.3d 712, 723 (7th Cir. 2005) (employer's failure to follow its own internal procedures with respect to the hiring process points to a discriminatory motivation)**.

Plaintiffs maintain that they were qualified for the position but were passed over in favor of Lee and that Defendant's stated reasons for choosing Lee are a mere pretext for discrimination. Plaintiffs argue that Defendant used subjective criteria such as "culture" and "vision" as a mask for discrimination. Vaughn, in particular, had significantly more and more varied experience than Lee or any other candidate since he had worked at the Center for more than thirty-

10

one years, including fifteen years as an SSSA.[2]  Doc. 55, Exhibit Z, Vaughn Deposition.  Vaughn's performance appraisals for the prior two years were "successful," which was the highest rating available.  Doc. 52, Exhibit Y.  On the October, 2002, through September, 2003, performance appraisal, Floyd commented that Vaughn had "proven to be a highly valued and capable member of the Golconda team" and that he was confident of Vaughn's "ability to provide greater leadership and effectiveness in employment opportunities and experiences for our students."  Doc. 55, Exhibit Y.         Lee had approximately seven years' work experience with Defendant, beginning in 1997 as a part-time fill-in employee, driving the bus and supervising students in the dorms.  Doc. 55, Exhibit I, Lee Deposition 7:18-24.  Between 1999 and 2004, Lee was employed at the Center as a "social services assistant as a GS-7, dorm staff, primary dorm staff."  *Id*. 9:5-13.

Under Seventh Circuit case law, "[n]othing in Title VII bans outright the use of subjective evaluation criteria."  ***Millbrook v. IBP, Inc*.  280 F.3d 1169, 1176 (7th Cir. 2002) (*quoting Sattar v. Motorola, Inc*., 138 F.3d 1164, 1170 (7th Cir. 1998))**.  Indeed, "[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII. . . ."  ***Id*. (*quoting Denney v. City of Albany*, 247 F.3d 1172, 1186 (11th Cir. 2001))**.

Defendant alleges that the telephone interview was the basis for hiring Lee because it revealed "his vision for the position and the overall success of the Center," his "consistent,

---

[2]From Vaughn's deposition, the Court understands that Vaughn was previously a GS-7 SSSA and then "went to vocation as a placement officer."  Doc. 55, Exhibit Z 10:24, 11:1-5.  Vaughn "was happier" in the SSSA position, which also paid more and offered more opportunity for promotion.  *Id*. 12:8-22.

positive philosophy for impact on the Center's culture," and his "mission with a goal for the betterment of the Center." Doc. 48, Defendant's Memorandum, p. 8. Nonetheless, at the close of the interview process, Twardowski still had the highest evaluation score. Defendant claims that the rankings were a tool only and not meant to be a decisive factor in the evaluation process. However, since Twardowski remained the top candidate *after the interview* and Lee was the person recommended by the committee, the Court finds that Plaintiffs have raised a triable issue of fact as to whether subjective factors of "culture" and vision" were a pretext for racial discrimination.

Committee member Steffens indicated that the Center's "culture," is an environment of 75% black youth. Doc. 54, Steffens Deposition 39:12-18, 40:3-4. Steffens stated that "Lee talked different" and that Steffens himself did not understand all of the things that the black youth at the Center were saying. *Id*. 39:14-15, 40:3-6. A jury could conclude that Lee was chosen because he was seen to be more culturally attuned to the students than Twardowski who writes "like an educated white person." *Id*. 39:16-21.

Because the Court concludes that Plaintiffs have provided sufficient direct or circumstantial evidence of discriminatory intent to withstand Defendant's motion for summary judgment, it need not further analyze this matter under the indirect, burden-shifting method established in *McDonnell Douglas*.

**IV.** <u>Conclusion</u>

Plaintiffs have demonstrated by both direct and circumstantial evidence that genuine issues of material fact exist in the record, making summary judgment inappropriate. Accordingly, Defendant's motion for summary judgment (Doc. 47) is **DENIED**.

**IT IS SO ORDERED.**

**DATED this 26th day of July, 2007**

<u>**s/Michael J. Reagan**</u>
**MICHAEL J. REAGAN**
**United States District Judge**